at all. Argument is not to exceed 15 minutes per side. Mr. Aird, you may proceed for the appellant. Good afternoon, Your Honors, and may it please the Court, I'd like to reserve five minutes in rebuttal. Michael Aird on behalf of Plaintiff Jeffrey Rasawehr. The District Court below erred in finding that Mr. Rasawehr's First Amendment claims here accrued when the criminal charges were brought. This afternoon, I will begin by discussing why claims of retaliatory prosecution under the First Amendment should require a favorable termination, as required by his 1871 analog, the common law tort of malicious prosecution. Next, I will address that at the time of being criminally charged, Mr. Rasawehr did not know of the retaliatory purpose for his prosecution, which he only learned at trial, and therefore, the accrual date should be at that point. Finally, I will address that the Supreme Court's recent decision in Chevron v. Napoleon requires this case be remanded to the District Court for further analysis as to Mr. Rasawehr's Fourth Amendment malicious prosecution claim. Mr. Rasawehr here brought a claim of First Amendment retaliatory prosecution and also a claim of Fourth Amendment malicious prosecution. The elements of both of these claims are very similar. At their essence, they both require wrongful prosecutions brought without probable cause. However, the District Court below found that the First Amendment claims were barred by the statute of limitations, but not the Fourth. Why did that happen? The difference is the requirement of a favorable termination of the underlying criminal case is required to bring a Fourth Amendment malicious prosecution claim. Although at least one court has recognized that this requirement has not been widely adopted in the First Amendment retaliatory prosecution context, this is an evolving area of law. The Supreme Court first recognized that First Amendment retaliatory prosecution claims required that the criminal charges have been brought without probable cause in 2006 in the Hartman v. Moore case. But there's been a shift, though, in how the Supreme Court looks at these types of cases, as explained by the Supreme Court in the 2017 case, Manuel v. The City of Juliet, and also in Thompson v. Clark in 2022. You agree with the other side in this case that looking towards whether there was an favorable termination instead of the absence of probable cause would require us to restate or modify our current law? I think that it's something that hasn't been recognized, but I don't think it would require us to restate the current law. The Rapp case, where the District Court found that basis from, was an unpublished decision that relied on cases from other districts that weren't analogous to this case. Further, the way that the Supreme Court has analyzed these cases has changed since 2016, in our opinion, has changed since 2016, when Rapp came out. And looking now, what we have to look, I think what would be the best course would be to look at the 1871 analog, at the time when 1983 was adopted, which was malicious prosecution and what that would require. That's how the court... So you don't think that's a change in the law? I don't think that's a change in the law, Your Honor. I think that what that is, is recognizing a claim. It does present a new hurdle for plaintiffs to bring these sorts of claims. So to that extent, as it stands now, a plaintiff could claim that they brought a charge without probable cause before one would get there, one has a favorable termination. So it would be an additional hurdle for plaintiffs, but I think it's one that's required by the 1871 analog of malicious prosecution, Your Honor. That's really the... If we're looking at the analytical precedent of the Supreme Court, which is also just reaffirmed this summer in the Chevrini case, there would be a requirement for favorable termination in a retaliatory prosecution case. And this makes sense, Your Honors. There's never going to be a case where there's a lack of probable cause that does not also result in a favorable termination. Therefore, this situation makes sense. Using the reasoning of the court below, even if Mr. Rasselware had known of the retaliatory intent of the defendants, he would have had to bring a federal lawsuit far before the criminal proceedings were completed. This creates a messy situation where simultaneous proceedings... Simultaneous criminal proceedings are happening often in state court along with a federal civil lawsuit ongoing together, which is an undesirable situation that could be ripe for abuse by criminal defendants. Further, a favorable termination requirement protects the First Amendment rights of people that don't have knowledge of their retaliatory intent, of their prosecutions, until well after they were criminally charged. Why should someone... Why do you not have knowledge in this particular case in light of the October 2016 criminal charges actually quoting language and specifying things that were being said? Why isn't that... That's not a conduct talk. That's speech. Why doesn't that give him the notice? I don't think that gives him notice because what the criminal charge actually brought there, Your Honor, is... What it suggests is that it is the conduct that was alleged that his... By making speech, that he hampered or impeded and obstructed the sheriff's department and government officials in that capacity. And so what... Which is... You could have the obstruction official justice charge is content neutral in its face. You could imagine a situation, Your Honor, where there could be some sort of speech that really did substantially impede or obstruct official business. That was not the case. That was not the situation in this case, Your Honor. At trial, it came out that really the reasoning was the content of Mr. Rosower's speech and not his conduct. There's nothing in the complaint that would give rise to any knowledge that the actual basis was the content until he got to trial and Sheriff Gray testified as to such that if there had been a similar situation where someone was talking about how nice his hair was, he wouldn't have brought these criminal charges, but that was it here. Further, there was a probable cause determination with the complaint when the complaint was filed by the clerk. Ohio Rule Criminal 4, once a misdemeanor charge is filed, there is either by the clerk of court or by someone that the presiding judge would nominate makes a probable cause determination. And so what this situation would be, Mr. Rosower would have to plead that there wasn't probable cause when there was a determination at that point that there was, although only based on the complaints and what actually happened in this case is that once the trial commenced, two and a half years after the complaint was charged, the trial took, it was a very long misdemeanor trial, time to lead up to the trial. But at that point, it became evident what the real retaliatory intent for Mr. Rosower, for the defendants in this case in bringing these charges for Mr. Rosower, that the charges were not actually based on the conduct of his behaviors, but instead were based on the content of his speech. If you think quoting in that charge all of the speech does not put him on notice, I would, could you short, give me a shorter answer of why that doesn't tell him. They're after you for what you're saying. Yes, Your Honor. And so the shorter answer to that would be that what was alleged was that there was a hampering or impeding an obstruction of the business. And so while Mr. Rosower could have thought that there might not have been, I don't think that that wouldn't put him on, what they actually claimed that there was something that would hamper or impede him. And that just the, and also, Your Honor, the different allegations in the complaint, there are a wide range of different types of allegations. But in particular to your question, I don't think that just because there are, you could imagine where there's a content, where the content of the speech, you can insult the police, but if it actually creates a substantial interruption because of the content of your speech, that I think could be charged under obstruction if it actually hampered or impeded, which wasn't the case here, Your Honor. Briefly, I'll just address the Fourth Amendment claims. In summary judgment, the lower courts relied on this Court's previous opinion in Howes v. Hodes, excuse me, Howes stood for the proposition that in a multi-count criminal complaint, only one complaint needed to be supported by probable cause to defeat a malicious prosecution claim. This summer, the Supreme Court essentially vacated that reasoning, relied upon in Howes, and so therefore the reasoning in the lower court below. The Supreme Court rejected the any crime rule from Howes and requires a reviewing court to analyze criminal complaints charged by probable cause. This analysis was not undertaken, and the court only should be remanded for further consideration. I see that I'm out of time, if there's no further questions. Perfectly timed. Thank you. Good afternoon, Your Honors. May it please the Court, Counsel. My name is William Lang. I represent Sheriff Gray and Detective Fortcamp and Mercer County, as I have since this case was filed in September 2019 in the case, in the court below. I take issue with some of the comments Counsel made concerning the record, the trial record in particular. Sheriff Gray was called to testify. He explained how his department was hampered by these various calls and emails. He did not discuss the content of them, but just the fact that they were and how it affected the operation of his department. In fact, in one call that he was asked about, he noted that there were telephone calls in the background of this call with Mr. Rossewer, which weren't answered, impeding the operation of the department. In addition to that, when asked if somebody commented on your hair or whatever that comment was, would you issue an arrest warrant or whatever the question was, he said, I would have told him to stop. That was the answer to the question. I would have asked him to stop making the calls. Mr. Rossewer was asked to stop making these calls in July, I think, of 2016 in a letter from the prosecutor's office to his counsel. His counsel had been involved because there were public records requests and numerous other incidents involving Mr. Rossewer. So the prosecutor was told to go through counsel. So he sent a letter to Mr. Yaman, who represented Mr. Rossewer at the time, asking him not to, telling him that his client was interfering with the operation of the sheriff's department by making these calls or emails. Please do not do that unless it's an emergency. There are other fora that Mr. Rossewer had available to him, the Facebook page, where he could post comments and ask for responses. Nothing came up about that, about the sheriff limiting him in that respect, because he wasn't limited. In addition to that, he could have gotten a permit and demonstrated in front of the sheriff's department about how unfair the sheriff was or how Marty Emrein entrapped him in a domestic violence case several years before. Those avenues were available to him. He was warned beforehand, do not make these calls, do not use this system. The county had a right to do that. They were simply limiting the time and scope of the demonstration or the calls. It was not content related. It was performance related. What is it about the July 16 letter from Fox that you said clearly places Mr. Rossewer on notice that his First Amendment rights were being violated? What was the... The July 2016 letter. The letter from the prosecutor? It was Fox, wasn't it? Yes, it was Matthew Fox. Matthew Fox, the prosecutor. What is your argument for why that letter in itself placed him on notice that his First Amendment rights... Mr. Yamen was told to advise his client as to what consequences could result from a failure to comply with the request, which is a precursor to a charge of telephone harassment or telecommunications harassment under the law. Unfortunately, he wasn't charged with that, but that put him on notice that the prosecutor's office and the sheriff were aware and wanted him to stop this behavior. It was not content related. It was taking up the sheriff's department's time in preserving the peace, which is his main duty under the law. As to the statute of limitations argument, I think the question is what events should have alerted the typical layperson, Mr. Rossewer, to protect his or her rights, his rights? When did the cause of action accrue? There is nothing in the retaliatory prosecution claim. The law would have to be changed. Success on the merits is not an element of that tort that has developed over the years. At the point that the defendants initiated the prosecution, which was October 25, 2016, the plaintiff, Mr. Rossewer, had engaged in his claim-protected activity, making the phone calls, sending the emails. The county and the sheriff took their adverse action, which was filing the criminal complaint against him, and purportedly motivated by the plaintiff's protective activity, his speech. That was done without probable cause. That's the retaliatory prosecution claim. He claims that it took a trial to figure out that Sheriff Gray wanted him prosecuted. On October 25, 2016, as stated in paragraph 17 of the complaint, the plaintiff points to Sheriff Gray saying the First Amendment wouldn't protect him in this case. He's on notice on that day that he should protect his rights. He failed to do that. Whether the case lasted six months or two and a half years like it did, I don't know how that happened on a misdemeanor case in Findlay Municipal Court, but it did. He was on notice. He should have brought the claim within two years. He did not. As he did not with the other counts concerning his First Amendment rights. As to the wrongful prosecution claim, however, I'd like to address the fact that the District Court found that because there was probable cause for one, that meant there was The officers, Sheriff Gray and Detective Fortkamp, were immune under existing law. The Mullinex case would indicate that if the controlling law was not adverse to them, you can't go back and say, hey, they should have known the law was going to change. So I think that the court, in its holding that the officers weren't held to qualified immunity, disposes of the wrongful Not the The qualified immunity would take care of count three of the complaint. The malicious prosecution claim. The court does not have to return the case for an evaluation As Chevrini would suggest, of each and every count of that complaint. Refresh my recollection. Did you plead qualified immunity here? In the case, yes. Was there a theory of Monell liability pled here? There was not a theory of Monell liability pled here, no. So that would leave only the individual capacity claims against Gray and Fortkamp And your position is, your pleading was qualified immunity in those individual cases. Yes, and that would eliminate any claims against Mercer County, also. Thank you. Yes, thank you. Appreciate it. Rebuttal? Rebuttal? Thank you, Your Honors. Is there a pleading of Monell liability in this case? I don't, from the record, I do not recall there being one there. Thank you. So I'll start where my friend on the other side left off with qualified immunity. Qualified immunity shouldn't apply to any of these charges Because this is a situation where the conduct alleged here, This is not the type of case where there was a split-second decision. Qualified immunity protects officers from doing things, Protects government officials from not, From violating people's constitutional rights when they weren't, When they didn't know. And in this situation, filing a retaliatory prosecution, Filing a prosecution without probable cause in violation of someone's First Amendment rights Is something that's been part of the Supreme Court's jurisprudence For at least 50 to 60 years, going back to Bradenburg, But more recently Neves, also Hartman v. Moore. And you can't separate, The conduct here was a violation of the First Amendment So further, at Chevron, there's been no discussion There was no discussion in the Chevron case that qualified immunity Would alleviate liability in that particular situation And it's very similar in that respect to the House v. Hodes It needs to be remanded to that issue. I just don't understand what you're saying. Let's assume that there was one of these charges that was supported by probable cause And that's what the law was at the time. The law then changes With Siverini after what happened here To show that you've got to go back and you've got to look at each charge To see if it was supported by probable cause. They changed the standard. So why would that not trigger qualified immunity? In the sense that the law was not clearly established As to the obligation on the charging party at the time these charges were filed. Your Honor, I believe that the answer to that question Is that the prohibited conduct hasn't changed at all. The prohibited conduct of filing a charge Without probable cause And retaliation for protected speech That's been established for a long time. To suggest otherwise would be to say that it's okay because you filed another charge That you can just tack on a dozen other charges that were also false. What you've just described is what the law was at the time. As long as one charge was supported by probable cause Then that claim is out. Then they changed it to say each charge has to be supported by probable cause. Perhaps another way to say that is you've got to be more careful. In terms of looking at it charge by charge. It still seems to me that the standards that are imposed upon the charging parties Changed. So why would that not call into question Whether the law was clearly established? I think because, Your Honor It's been clearly established that the conduct that has happened here That to charge without probable cause is prohibited. To say that it was okay because we added another count I just don't think that that doesn't change What is actually prohibited and the conduct Qualified immunity is designed to protect police officers from Ineffectively violating someone's Unintentionally, excuse me, violating somebody's constitutional rights. And that's not what happened here at all. This is a situation where the claim We are alleging is that there is an intentional violation of First Amendment rights Based on content-based speech. What case should we look at that you're relying upon to suggest that However you pronounce that case didn't change anything? I think that the Schiavarini decision itself was just remanded down to the first Remanded down to the district court as of yesterday from this court Without much opinion. I don't I think we're just looking at supreme, I don't have a case off hand, Your Honor. That's fair. Thank you. But just looking at the content Also just briefly to address the letter issue that My friend on the other side brought up. We're talking about That letter alleged that he threatened or harassed. Threatening and harassing Is not protected speech. And that wasn't what he was charged with As my friend pointed out. He was in effect charged with Hampering or impeding which, Your Honor, we hold was not shown At the trial court and therefore there was a lack of probable cause as to the charges That he was brought to. If there are no further questions, I see my time is up. I would request that this case be remanded. Thank you. Thank you both for your briefing and your arguments. The case will be taken Under advisement and an opinion issued in due course.